The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Good morning. Judge Floyd, Judge Wynn, and I are pleased to welcome all of you to the Fourth Circuit. Our first case is the Janice F. Trump v. Eastern Association of Coal Corporation. Yes, Your Honor. I may please the Court. My name is Tim McDonald, and I represent the petitioner in this case, Mrs. Janice Trump. It is my pleasure to introduce to the Court today Ms. Luis Hernandez. Ms. Hernandez is a third-year student at Washington and Lee Law School, and will be presenting the oral argument on behalf of Mrs. Trump. Thank you. May I please the Court. My name is Luis Hernandez, and I represent the petitioner in this matter, Mrs. Janice Trump. I would like to reserve two minutes for rebuttal. Mr. Jesse Trump died in October of 2006, and since his death, Mrs. Trump has been fighting to obtain the black loan widow's benefits that she is entitled to. But 12 years and six decisions later, Mrs. Trump still has not received a decision from the administrative law judge that complies with the law or that meets a substantial evidence standard. We believe, Your Honor, and we assert today that the administrative law judge's most recent decision is flawed based on three fundamental ways. First, the administrative law judge incorrectly applied this Court's precedent in general to arrive at the conclusion that Dr. Hauser's opinion was insufficient to show that Mr. Trump's coal dust-induced hypoxemia hastened his death. Second, Judge Burke's conclusion that Dr. Hauser's findings that Mr. Trump suffered from hypoxemia during his lifetime was poorly supported by the objective medical data is itself not based on substantial evidence. And third, Your Honors, Judge Burke's conclusion that Dr. Hauser's report failed to offer an opinion on whether the claimant's emphysema caused his hypoxemia through ventilation perfusion mismatch. is also not based on substantial evidence. And each of these three conclusions were themselves irrationally arrived at and in absence of evidence that could support them. Your Honors, I get that all of the conclusions arise from the Board's decision that Dr. Hauser's opinion was too hypothetical. Yes, Your Honor, that is correct. However, if I may explain, we felt obligated to address all of the reasons that were offered by the administrative law judge in his decision to discredit Dr. Hauser. And this was based on the breadth of the Board's decision. It was not entirely clear to us that the BRB was limiting its opinion to only one issue of whether this opinion was general or too broad. We've been up and down this case, at least you have. We haven't. Between the ALJ and the Board, your client first won. Then you went to the Board and they sent it back. And at some point in time, the ALJ changed its mind on it. But much of this case is evidentiary, at least in terms of the five doctors involved, one favoring your client, Dr. Hauser. Yes. In terms of our review of this case, aren't we limited in terms of how we can review those findings by the ALJ? And why wouldn't those findings be binding on us? Well, yes, Your Honor. It's our position first that this Court can review the three issues or the three conclusions that the judge reached to discredit Dr. Hauser's opinion, because this was the base of the Board's decision. The Board first explains that the administrative law judge has the discretion as a trial factor to render credibility determinations, and the Board isn't empowered to revoke the evidence. And then they say that because substantial evidence supports their findings with respect to Dr. Hauser's decision, that they affirm the administrative logic. And they seem to be affirming it on the grounds that Dr. Hauser's opinion wasn't sufficiently reasoned. Do you agree? That's what they say. Yes, Your Honor. All right, so it might be helpful if you could focus for us on why that's wrong from your perspective. In other words, in what respect was Dr. Hauser's opinion sufficiently reasoned? Because it seems to me that that may be the only way that you're going to prevail here, is if you can show that that's incorrect. Yes, Your Honor. In footnote 6 of the same page of the Board's decision, 866, the Board concludes and says that there was another basis for which the administrative law judge questioned Dr. Hauser's basis for attributing the minor's hypoxemia to his hemoconiosis. So we believe that those issues are the other issue or the other basis that the judge used to discredit Dr. Hauser is also relevant. However, going back to the issue of whether his opinion was sufficiently reasoned, it's our position that in discrediting the expert here, the LJ Berg concluded that Dr. Hauser's opinion was insufficient to comport with the requirements of the Administrative Procedures Act. And that's when he went on to equate Dr. Hauser's opinion to the opinion of Dr. Rasmussen in general. But here, the administrative law judge was clearly mixing apples and oranges. In general, there were four critical factors that this Court looked at to come to the conclusion that Dr. Hauser, Rasmussen's opinion was insufficient to satisfy the requirements of the APA. Well, focus on the one where the DOJ said that the reason that it was not sufficient, Dr. Hauser's opinion, was because it didn't link his, it didn't even link his opinion to the APA. It was based on apoxia as a causative factor in the minor's condition. And following up, to add to Judge Wynn's question, it seems that ALJ discredited the testimony on the basis that he used the conditional term, can, as opposed to something more certain. Yes, Your Honor, and if I may explain, what the judge does there is that he cherry-picks a sentence out of Dr. Hauser's report and says that the only thing he can say is, the only thing he has to say about how hypoxemia hastens the death of the minor is that sentence alone, that hypoxemia can hasten a minor's heart attack. But this isn't all that Dr. Hauser had to say about the minor's condition and how that hastened his death. Yes, and Ms. Hernandez, what I'm puzzled about, the fact that the ALJ seemed to note the conditional characterization on condition, which was on page 20 of the appendix, which was Dr. Hauser's, I'm not sure which page it was. But in any event, two pages later, the doctor is very specific as to the patient. So what went wrong there in terms, in other words, you said they're cherry-picking that one sentence. Well, tell us what else is in the doctor's opinion that supports your cherry-picking assertion. Yes, Your Honor, and Dr. Hauser begins this report by noting the treatment records, the arterial blood gas test, the x-rays, the pathology studies that he reviewed in coming to his conclusion. And what he says and notes is that Mr. Trump had emphysema, which was his legal pneumoconiosis, and that was noted in the pathology studies. He also noted that Mr. Trump had fibrosis, which was his clinical pneumoconiosis. And then he says Mr. Trump also has hypoxemia, as was noted in the arterial blood gas test. Then he explained how the emphysema and the fibrosis caused his hypoxemia through a process called ventilation perfusion mismatching. Am I right or wrong that Dr. Hauser is the only medical person who used the magic words to a reasonable degree of medical certainty? Or did they all do that? Your Honor, in fact, Dr. Hauser did say and place his professional reputation on the line by stating that he had made these findings and these conclusions to a reasonable degree of medical certainty. Did the other medical people also use those magic words? I am not sure, Your Honor. I'm not sure about that question. But Dr. Hauser goes further and says that Mr. Trump had this hypoxemia, and he explained how hypoxemia hastens a minor's death. And then he supported that explanation by citing medical literature that explains precisely how this process happens, Your Honor. And then on page 22 of his report, he stated firmly that he believed that his hypoxemia and his respiratory disability are due to his clinical and his legal condition. And he also stated, I also believe that his legal and his clinical pneumoconiosis was a substantial contributing factor to his death. At this point, Your Honor, there were no questions left for Dr. Hauser to answer here. He didn't say, like Dr. Rasmussen in the Gerald case, I think it could or it might have contributed to his death. Dr. Hauser rather said that it did, and he was very firm in his opinion. When the judge takes his sentence out of context, Dr. Hauser was merely explaining the process by which this happens, by which hypoxemia hastens death. But he connected step by step each of the conditions that Mr. Trump had to his cause of death. And then he says at the end of his report, again, I express these findings and opinions to a reasonable degree of medical certainty, and are based upon review of the above materials and extensive literal research and 32 years of clinical experience as a board-certified pulmonologist. Your Honors, we believe that there's nothing else here for the Court to consider because Dr. Hauser was, in fact, well-reasoned and well-documented. The application of Gerald and Mays, the two cases for the Fourth Circuit on this. I'm sorry, Your Honor, I couldn't hear you. Well, Your Honor, the Gerald case allows this Court to decide that Dr. Hauser's report complied with the requirements of the Administrative Procedure Act. That, in fact, his opinion was reliable, that it was prerogative, and that it was substantial. And there's no question about it because a reasonable mind would look at his opinion and say, in context, this was a well-documented opinion. There's nothing else I could have done. So in the basis of Gerald, this Court can say, yes, the judge may supply the law in equating Gerald to Dr. Hauser's opinion. And the other opinion, Your Honor, that we believe is crucial to this case would be Collins. Because once this Court decides that the judge misapplied Gerald, then the Court can go ahead and say, there's really no way that a reasonable mind could defer and come to a different conclusion here. When we look at the substantial evidence and when we look at the facts of the case, there's no question that Mr. Trump's hypoxemia hastened his death and that Dr. Hauser proved that this was the case. The other experts, Your Honor, don't have an opinion on whether hypoxemia hastened the minor's death. They only say that the hypoxemia was there, but that it wasn't caused by his pulmonary condition. But the judge previously noted that those decisions from, or those opinions, rather, from the experts were not consistent with the treatment records, that they misstated the evidence in saying that Mr. Trump never suffered from a lung impairment. Your Honors, for these reasons, and for the reasons put forward in our brief, we ask this Court to reverse and remand the case with instructions to award benefits and without further administrative proceedings. Thank you. Now I'll hear from Mr. Gerson, please. Good morning, Your Honor. I'm Leonard Gerson from the U.S. Department of Labor. I'm representing the Director of the Office of Workers' Compensation Programs. I think you're already familiar with the facts of this case, it appears. The critical factor in this case, I think, is the substantial evidence rule and the scope of your review. The standard of review of this court in the black lung benefits case is narrow. The ALJ is the sole fact finder, so long as there's a rational basis for his conclusion. Was there any question that Mr. Trump, when he passed away, had black lung? Does everybody agree that he had black lung disease? Yes, there's agreement on that. He died from a heart attack. So the hypoxia is what links it, which is the low oxygen level in the blood. And as I understand it, there's a lot of specific evidence that he had hypoxia. But your argument is that the causative element is missing because it's not connecting hypoxia with the death? Or is there something different? Well, our primary argument is that the use of the word can in Dr. Houser's report was too speculative. Right, but that's just one place. That's on page three of Dr. Houser's report. But when you look at page five, he talks particularly about Mr. Trump. He links the hypoxemia due to the emphysema arising from the coal mining employment. It was a consequence of the coal mining employment. I believe that this was a substantial factor contributing to his death. So if the ALJ said that the opinion of Dr. Houser wasn't sufficiently reasoned, we have to look at the whole opinion, don't we? Well, I think what you have to do under the scope of review, particularly under Chenery, is look at the rationale of the Benefits Review Board. So it's not the whole report. However, you're correct, Judge Geen. If you just use the word can and otherwise it was a strong report, that wouldn't be. That's correct. Well, I'm not sure if we have to look at the whole thing. You have to look at the basis for was it could a rational person come to the conclusion of the ALJ that Dr. Houser's report was not well reasoned? You have to look at the whole report to decide whether it's well reasoned, not just one page of the report. You can't look at that one isolated fact. You're totally correct, Your Honor. How does the ALJ move from initially saying Dr. Houser's opinion is well reasoned and then when the board reverses, not on that basis, but say there's some additional stuff you should look at, completely flips and says it's not well reasoned? Yes, well, the reason why the ALJ was initially reversed was a primary reason is that the board was concerned that he was making his own analysis of the arterial blood gas exams, which are the primary means of determining the degree of hypoxemia that a patient has, rather than relying on the medical opinions. Was there any discussion, just as a matter of curiosity, of why he had hypoxia? He didn't smoke, as I understand. He had black lung disease. And no discussion as to, I mean, that doesn't sound like something a normal person just gets. You get it from some kind of causative factor, and then I assume that leads to the heart attack. I have to admit I'm not familiar enough with the medical literature to understand the derivation of hypoxemia. But we agree he had hypoxemia. And even if the hypoxemia was caused by his pneumoconiosis, that's not sufficient. The hypoxemia had to be sufficient. You get a heart attack from it, you see. Right, that's exactly right. Under the standards, it has to hasten his death, isn't that correct? That's correct. And the reason why there was a switch, a reason, when the ALJ looked at the medical opinions again, particularly the ABG reports, the arterial blood gas reports, which are the primary means of determining whether the degree of hypoxemia, he found the basis wasn't there. Most of the ABG reports that demonstrated a high degree of hypoxemia, were not valid because they were done at the time that Mr. Trump was being hospitalized. Well, yeah, but there were a lot of other tests. I mean, they went from 2001 all the way through to the date of his death, didn't they? That's correct, Your Honor. But only one of them, a March 2002 report, found that the hypoxemia was a qualified cause of death. Qualifying number, there are tables, table C, in the Code of Federal Regulations, but which would determine whether an ABG reading is high enough to be qualified. Right, but I guess what I'm trying to get straight in my mind, Mr. Gerson, maybe you can help me, is that, you know, there seems to have been some muddling that went on in this case, because part of it involved the minor's disability claim, as opposed to the widow's survivor claim. And the widow's survivor claim is a lesser burden, don't you agree, than the minor's disability claim? It's a, I don't think it's so much of a lesser burden as a different, you have to prove something else. Okay, well, why don't you then walk us through what had to be proved in the survivor claim, because I think some of this evidence is going back and forth, and while the minor's claim was not as strong as it could have been, why didn't Mrs. Trump meet the evidentiary burden for the survivor claim? Well, we agree Mrs. Trump was the minor's widow, and in response to Judge Wynn's question, there's no question that he had pneumoconiosis, that's been agreed to. The question is, this was a man with serious heart problems, his coronary artery was 70% occluded. The question is, did that pneumoconiosis lead to his death, or was it simply the heart attack? And the way that's shown is, a primary way is, and the way Dr. Hauser discussed it, was talking about his hypoxemia. And in the same way, before the ALJ spoke about the weakness of the use of the word can, he discussed the ABG reports. I'm sorry, but you don't have to have, it seems to me you don't have to be totally disabled to have pneumoconiosis hasten your death. And the ABG studies were much more related to the disability claim. They bore to some extent on the cause of death, but they weren't central to it the way they were to the disability claim. The ABG studies were central to the disability claim, were they not? And that's why his claim is there. I'm sorry, Your Honor, my hearing is not great. Okay, let me try to keep my voice up. Actually, let me try to answer the question. This is a waste of time. Do you understand the question? I think, you'll tell me if I don't. Oh, I better be more clear, I'm sorry. No, it's my fault. Let me go back. So, what's central here, again, is, and in this case, is, and under Judge, Dr. House's opinion, did the hypoxemia, was that a contributing factor to Mr. Trump's death, which everyone agrees was a heart attack. In order for the hypoxemia to have been a contributing factor to Mr. Trump's death, it was a heart attack. If it was a contributing factor, it would have to be strong enough to have affected him so that he also would have died from it. Simply having hypoxemia is not sufficient. Dr. Houser said in his report that Mr. Trump had moderately severe to severe hypoxemia. However, that's not what the ALJ determined was the degree of hypoxemia that Mr. Trump had. And of all those tests, ABG tests, which are the central way of determining the degree of hypoxemia, only one showed that is hypoxemia. Hypoxemia was at the severe level, that was the March 2002. All of, one of the other tests showed mild hypoxemia. Now, February 2006 showed severe hypoxemia, but you're saying because he had some oxygen administered that that rendered the test. I'm sorry. February 2006. All the 2006 tests were done while he was being hospitalized. And why does that, does any doctor here in this record say that renders them invalid? Under the rules, under the Code of Federal Regulations, under our rules. They're automatically invalid? Yes, that's correct. They can't be used to qualify. I felt the problem in the case from your perspective was not the question of whether this was moderate or severe hypoxemia, but the question, but the issue from your perspective and our review limitation being that even if it is, Dr. House's opinion linking it from a causative perspective was generalized. And given the generalization of that causative opinion, it falls in the category of not, you know, of not being a of the ALJ being able to make that finding. Not the question of whether or not he actually had it and the degree. But you seem to be focusing on the degree of it. Focusing on it in response to Judge Keenan's question. She asked, well, you just can't look at one word in a report, can, and discount the whole report. There must be something more there. The argument going to the generalization of Dr. House's statement? That is the central question, Your Honor. Let me ask you on that. Now, you're familiar with the Jarrell case, and you would admit that at least Dr. House's so-called generalized opinion, the way you call it, is stronger than the one that was in the Jarrell case, would you not say? I wouldn't make a judgment on that. You've read that opinion in the Jarrell case, and you've seen the opinion that was given there. And it would certainly appear that he has a lot more going there than the expert in the Jarrell case. Would you not say? As I recall the Jarrell case, there was a rejection of survivor benefit claims because of the too generalized statement by Dr. Which is a situation we have here. I also want to make a critical point. It's not whether I Excuse me for interrupting. Don't get off Jarrell quite so quickly. Jarrell, the doctor just suggested that something was possible. Isn't that different than what we have here? Dr. Rasmussen in Jarrell suggested that it was a possible cause. Seems to me that Dr. Houser is a lot more definitive than that. Well, that's why I was getting into the ABG test. To show, hey, it wasn't just that he used the word can. The paragraph before the AOJ looked at the ABG reports and evaluated Dr. Houser's determination that Mr. Trump had moderately severe to severe hypoxemia, which is a critical link, and found that the ABG test didn't prove that. And that informed his can view that, gee, we've got a weak analysis. Remember those ABG tests were found in Mr. Trump's case. Earlier case was denied in an opinion that you affirmed as being too weak to demonstrate total pulmonary disability. I see my time is up, Your Honor. Why don't you go ahead and finish your sentence? And so what's most important, I think, again, in this case, was the AOJ, did the AOJ, the Benefit Review Board, did they have a rational basis for the conclusion they came to? Not whether someone else, even this court, would look at the evidence and come to a different conclusion. Thank you, Your Honor. I apologize for not knowing Jarrell better. Okay, Ms. Hernandez, Mr. Gerson raises a fair point, I think, when he says that we've got to look at whether the VRB in upholding the AOJ, saying that there was a weak analysis, that it wasn't sufficiently reasoned. Now we might come to a different conclusion if we were deciding it in the first instance. Why are we compelled on this record to say that it's not supported by substantial evidence? Yes, Your Honor. We assert that in coming to the conclusion that Dr. Gerson, the judge applied Jarrell, and he said that the report did not meet the requirements set forth in the Administrative Procedures Act. This isn't correct, Your Honor. Again, no reasonable mind could, if that is the standard of review here, that this court is taking an independent review of the administrative law judge's decision, and it has to be supported based on this issue, because he parses a set... Help me clear up something. The Appendix C, which prevents using the arterial blood gas studies, does that apply only to the disability claim, or can a survivor's claim, can the full evidence be considered? What does Appendix C limit? Yes, that's clear enough. But the Appendix C establishes, Your Honor, is that ABGs that were taken during acute pulmonary and cardiac conditions cannot be used to establish total disability in a living minor's claim. Right. Does it address whether it can be used to establish a hastening of the minor's death on a survivorship claim? It does not say that, Your Honor. In fact, the administrative law judge never found that that was a reason to say that these ABGs were not severe. In fact, he acknowledged the other experts' opinion that stated that five of these ABGs were, in fact, severe, and none of the experts agree that that was the case, Your Honor. Okay. Now, what about his argument? There's no question these ABGs were very severe beginning in February 2006. Yes, Your Honor. But what about Mr. Gerson's argument, then, that he's saying you can't consider them because oxygen was administered? Your Honor, if I may answer your question? Yes, please. It's true that the later ABGs, Your Honor, were taken when he was in the hospital, but these ABGs still establish that Mr. Trump had a hypoxemia that was severe. And the ABGs certainly can't go to say, or there's really no way to establish that the hypoxemia there was caused by this other condition because he was in the hospital. And it doesn't even make sense, Your Honor, that someone who was being provided oxygen would have a lower oxygen level in their body. So that is our position. These ABGs still go to establish that Mr. Trump suffered from severe hypoxemia. So let me make sure I'm understanding your point. So what you're saying, someone with supplemental oxygen would have an even more severe deficit regarding oxygen than the measured levels taken at the hospital. That's what I'm saying, Your Honor. So for the reasons stated, Your Honor, we ask that this court reverse and remand this case with directions to award benefits. Thank you. All right. Thank you very much.
judges: Barbara Milano Keenan, James A Wynn, Jr., Henry F. Floyd